**EXHIBIT 1**

**UNITED STATES DEPARTMENT OF AGRICULTURE**
**OFFICE OF THE SECRETARY**
**NATIONAL APPEALS DIVISION**

| | | |
|---|---|---|
| In the Matter of | ) | |
| | ) | |
| XXXXX | ) | |
| XXXXX | ) | |
| | ) | |
| and | ) | Case No. 2005E000784 |
| | ) | |
| FARM SERVICE AGENCY | ) | |

---

## APPEAL DETERMINATION

XXXXX (Appellant 1) and XXXXX (Appellant 2) filed an appeal challenging a Farm Service Agency (FSA) decision issued March 29, 2005. FSA denied Appellants' request for a 'good faith' exemption citing Appellants' non-compliance with a conservation plan on highly erodible land (HEL). FSA based its decision on a Natural Resource Conservation Service (NRCS) technical determination that Appellants failed to fully implement a conservation plan on three of Appellants' farms. The three farms are the XXXXX farm (Case No. 2005E000784); the XXXXX farm (Case No. 2005E000785); and the XXXXX farm (Case No. 2005E000786). This determination is specific only to the XXXXX farm, which I will hereafter refer to as farm 1. Appellants argued they vigorously practice conservation on all of their farms. Appellants argue NRCS overestimates the soil erosion from the conservation measures they employ. Appellants also request that the National Appeals Division (NAD) grant equitable relief.

I held a face-to-face hearing on October 4, 2005, which continued through October 5, 2005. I left the hearing record open until October 28, 2005, to allow the parties the opportunity to review the extensive documentation, the testimonies provided at the hearing, and provide any final comments. The record closed October 28, 2005. I reviewed all evidence presented. Based on the evidence and the arguments submitted by the parties, and the program regulations that apply to this situation, I conclude NRCS erred in its soil loss estimation and that FSA erred in denying a 'good faith' exemption. The rationale for my decision follows.

## STATEMENT OF THE ISSUES

I had to resolve the following issues in order to reach my decision.

1. Did Appellants meet NRCS erosion control requirements on farm 1 during the 2004 crop year?

2. Did FSA correctly deny Appellants' request for a 'good faith' exemption?

## FINDINGS OF FACT (FOF)

1. In March 2004, Appellant 1 and NRCS signed a conservation plan for farm 1 (tract 8146). The plan outlined a completion date of May 2004 for all conservation practices. Appellant 1 agreed to numerous conservation practices including conservation crop rotations, field borders, conservation tillage, contour farming, and grassed waterways. *(Agency Record, pages 166 – 167)*

2. NRCS conducted a field visit and completed a status review of farm 1 on May 5, and again on May 26, 2004, to determine if Appellants were complying with the conservation plan. The "Status Review Documentation Worksheet" of the District Conservationist (DC) indicated Appellants had not installed grassed waterways but also that the waterways "...were not required this year." The DC also indicated that there was no active ephemeral or short-term erosion evident on the May 5, 2004, farm visit. The DC did not document any issues involving conservation tillage or contour planting on the "Status Review Documentation Worksheet." NRCS surmised that Appellants did not comply with the conservation plan resulting in soil loss greater than planned. *(Agency Record, pages 164, 169, 170)*

3. On June 2, 2004, NRCS notified the landowner with a copy to Appellants that Appellants were not actively applying a conservation plan. NRCS reasoned Appellants were not actively applying a conservation plan because:

   a. Appellants did not apply contours,

   b. Appellants did not leave enough crop residue after disking,

   c. Appellants did not seed waterways, and

   d. Soil loss was 9.3 tons per acre per year instead of the allowable 4 tons per acre per year. *(Agency Record, page 151)*

4. NRCS calculated soil loss estimates using the second revised universal soil loss equation (RUSLE2). Crop residue is a key factor in RUSLE2. Greater crop yields result in more crop residue. In calculating soil loss, NRCS estimated crop residue based on corn yields of 144 bushels/acre and soybean yields of 44 bushels/acre. Appellants' corn and soybeans yields were significantly greater than the crop yields utilized by NRCS (196 bushels/acre for corn and 51 bushels/acre for soybeans). NRCS over-estimated Appellants' soil loss because it did not utilize Appellants' actual crop yields to estimate crop residue. *(Agency Record, page 171; Appellant Exhibits PP, SS, VVVV; Testimony of Appellant Witness, 10-4-05 Hearing, Tape 2, Side 1 and 2)*

5. NRCS State Conservationist XXXXX issued a memorandum dated August 19, 2003, granting Appellants a conservation compliance variance for crop year 2003. XXXXX granted the variance because NRCS staff had made statements to Appellant 1 leading him to believe he was complying with NRCS requirements. *(Appellant Exhibit HHHH)*

6. Appellants have complied with NRCS conservation requirements on all farms for 2005. *(Appellant Post-Hearing Exhibit ZZZZ)*

7. Appellants requested a 'good faith' exemption from FSA. The FSA County Committee denied the request. *(Agency Record, pages 46, 69 – 71, 96 and 97)*

8. Appellants requested an appeal of the County Committee's denial from the FSA State Committee. On March 29, 2005, the State Committee denied Appellants' appeal. The State

Committee reconsidered its decision but upheld it on July 25, 2005. The State Committee found Appellant did not in good faith, apply specific conservation measures outlined by the conservation plan. *(Agency Record, pages 35 – 38, 587 – 588)*

9. In 2004, Appellants' conservation management methods were conducive to erosion control. *(Appellant Exhibit VVVV; Testimony of Appellant Witness, 10-4-05 Hearing, Tape 2, Side 2)*

**DISCUSSION**

The rule found at Part 11 of Title 7 of the Code of Federal Regulations (7 C.F.R.) governs the appeal. The rule found at 7 C.F.R. Part 12 govern the issues on appeal.

**Did Appellants meet NRCS erosion control requirements on farm 1 during the 2004 crop year?**

NRCS did not accurately calculate the amount of erosion based on Appellants' actual crop yields, I am unable to conclude whether the amount of erosion is within or exceeds acceptable limits. Regulation at 7 C.F.R. § 12.23(h) states that NRCS considers a person to be applying a conservation plan or system if the plan or system substantially reduces soil erosion as described in Section 12.23(b). Section 12.23(b) provides that NRCS will measure and compare the soil erosion under the conservation plan or system to the erosion occurring before the producer applied such a plan or system. Regulations do not allow a substantial increase in erosion. NRCS concluded soil erosion was greater than planned because Appellants did not apply all conservation measures outlined in the conservation plan (FOF 2). In determining the amount of soil erosion (and crop residue), NRCS estimated Appellants' crop yields rather than using actual crop yields in RUSLE2 (FOF 4). Consequently, NRCS overestimated soil erosion (FOF 4). NRCS soil erosion estimates are erroneous.

Additionally, NRCS did not give Appellants the full amount of time outlined by the conservation plan to complete conservation measures, nor were all measures required. The conservation plan gave Appellants until May 2004 to complete conservation practices (FOF 1). In May 2004, NRCS conducted a status review to determine if Appellants were applying the conservation plan (FOF 2). NRCS completed its status review on May 26, 2004, and notified Appellants June 2, 2004, that they were not actively applying the conservation plan (FOF 2 and 3). NRCS' status review documentation worksheet specifically states grassed waterways were not required in 2004 and makes no mention of the other violations outlined in the June 2, 2004, letter (FOF 2 and 3). NRCS erred in finding Appellants non-compliant with the conservation plan.

**Was FSA correct to deny Appellants' request for a 'good faith' exemption?**

I conclude FSA erred in denying a 'good faith' exemption. Regulation at 7 C.F.R. § 12.4(a) specifies that all persons are ineligible for USDA program benefits if they produce an agricultural commodity on HEL. Regulation at 7 C.F.R. Part 12.5(a) outlines exemptions to ineligibility. One exemption to ineligibility is outlined by Section 12.5(a)(5)(i) and (iii) which provides that no person shall be ineligible for USDA program benefits as a result of the failure of such person to apply a conservation system on HEL if FSA determines such person acted in good faith and without the intent of violating HEL conservation regulations. Regulation at 7 C.F.R. 12 does not define the terms 'good faith' or 'intent.' I therefore give the terms the common meaning as outlined in Black's Law Dictionary (Seventh Edition).

> 'Good Faith' is: "A state of mind consisting in (1) honesty in belief of purpose, (2) faithfulness to one's duty or obligation, (3) observance of reasonable commercial standards or fair dealing in a given trade or business, or (4) absence of intent to defraud or to seek unconscionable advantage."

> 'Intent' is: "The state of mind accompanying an act, especially a forbidden act. Whereas motive is the inducement to do some act, intent is the mental resolution or determination to do it. When the intent to do an act that violates law exists, motive becomes immaterial."

The conservation plan Appellant 1 executed for farm 1 included seven general conservation practices - conservation crop rotations, critical area planting, no-till residue management, field borders, contour farming, grassed waterways, and terraces (FOF 1). Appellants complied with two conservation practices (FOF 1 and 3) and NRCS deemed Appellants in compliance with all required conservation practices in 2005 (FOF 5). Appellants' conservation methods effectively controlled erosion in 2004 (FOF 8). FSA's denial of a 'good faith' exemption focuses on whether Appellants, in good faith, applied specific conservation practices [i.e. did Appellants in good faith plant on the contour, or establish waterways, etc] rather than an overall conservation system (FOF 7). The above regulation looks to whether a person is attempting to apply an overall conservation system rather than a specific aspect of that system as FSA decided. I find no evidence that it was Appellants resolve or 'intent' to violate the conservation plan. Even if NRCS soil erosion calculations were correct, I find that by definition, Appellants acted in 'good faith' because they acted without intent to defraud or to seek unconscionable advantage and attempted to implement a conservation system. NRCS' failure to grant Appellants the full amount of time to implement the conservation plan also evidences err by FSA in denying a 'good faith' exemption.

*Eqitable relief:* Appellants request equitable relief in this case. A NAD Hearing Officer has no authority to make a determination on equitable relief. In accordance with 7 C.F.R. § 11.9(e), the Director of NAD has the authority to grant equitable relief to the same extent such authority is provided an agency. While I cannot make a determination on this matter, a NAD Hearing Officer is responsible for developing the record to enable the Director to make a determination as to whether he should grant relief. I gave Appellants the opportunity in person and in documents to make a record to support a claim for equitable relief. If Appellants wish to request equitable relief, Appellants should request equitable relief in a request for Director review.

**DETERMINATION**

Seven C.F.R. § 11.8(e) provides that all appellants bear the burden of proving and agency's adverse decision erroneous by a preponderance of the evidence. Appellants have met that burden. NRCS erred in its soil loss estimation and FSA erred in denying a 'good faith' exemption.

This is a final determination of the Department of Agriculture unless a timely request for review is filed.

Dated and mailed this 23rd day of November 2005.

MICHEAL R. STEWART
Hearing Officer
National Appeals Division

Attachments:
Notice of Right to Request Director Review and/or Copy of Audio Recording

Request for Director Review

**EXHIBIT 2**

**UNITED STATES DEPARTMENT OF AGRICULTURE**
**OFFICE OF THE SECRETARY**
**NATIONAL APPEALS DIVISION**

| | | |
|---|---|---|
| In the Matter of | ) | |
| | ) | |
| XXXXX | ) | |
| XXXXX | ) | |
| | ) | |
| And | ) | Case No. 2005E000785 |
| | ) | |
| FARM SERVICE AGENCY | ) | |

## APPEAL DETERMINATION

XXXXX (Appellant 1) and XXXXX (Appellant 2) filed an appeal challenging a Farm Service Agency (FSA) decision issued March 29, 2005. FSA denied Appellants' request for a 'good faith' exemption citing Appellants' non-compliance with a conservation plan on highly erodible land (HEL). FSA based its decision on a Natural Resource Conservation Service (NRCS) technical determination that Appellants failed to fully implement a conservation plan on three of Appellants' farms. The three farms are the XXXXX farm (Case No. 2005E000784); the XXXXX farm (Case No. 2005E000785); and the XXXXX farm (Case No. 2005E000786). This determination is specific only to the XXXXX farm, which I will hereafter refer to as farm 2. Appellants argue they vigorously practice conservation on all of their farms. Appellants argue NRCS overestimates the soil erosion from the conservation measures they employ. Appellants also request that the National Appeals Division (NAD) grant equitable relief.

I held a face-to-face hearing on October 4, 2005, which continued through October 5, 2005. I left the hearing record open until October 28, 2005, to allow the parties the opportunity to review the extensive documentation, the testimonies provided at the hearing, and provide any final comments. The record closed October 28, 2005. I reviewed all evidence presented. Based on the evidence and the arguments submitted by the parties, and the program regulations that apply to this situation, I conclude NRCS erred in its soil loss estimation and that FSA erred in denying a 'good faith' exemption. The rationale for my decision follows.

## STATEMENT OF THE ISSUES

I had to resolve the following issues in order to reach my decision.

1. Did Appellants meet NRCS erosion control requirements on farm 2 during the 2004 crop year?

2. Did FSA correctly deny Appellants' request for a 'good faith' exemption?

## FINDINGS OF FACT (FOF)

1. In April 2002, Appellant 1 and NRCS signed a conservation plan for farm 2 (tract 1228). Appellant 1 agreed to numerous conservation practices including conservation crop rotations, critical planting areas, field borders, filter strips, nutrient management, pest management, residue management (no-till and strip-till), contour farming, and grassed waterways. *(Agency Record, pages 292 – 295)*

2. NRCS conducted a field visit and completed a status review of farm 2 on May 17, 2004, to determine if Appellants were complying with the conservation plan. NRCS surmised that Appellants did not comply with the conservation plan resulting in soil loss greater than planned. *(Agency Record, pages 270; 297 – 314, and 319)*

3. On June 1, 2004, NRCS notified the landowner with a copy to Appellants that Appellants were not actively applying a conservation plan. NRCS reasoned Appellants were not actively applying a conservation plan because:

   a. Appellants tilled cornstalks before planting,

   b. Row grades exceeded what was acceptable for contour farming, and

   c. Appellants did not establish waterways in all locations. *(Agency Record, page 270)*

4. NRCS calculated soil loss estimates using the second revised universal soil loss equation (RUSLE2). Crop residue is a key factor in RUSLE2. Greater crop yields result in more crop residue. In calculating soil loss, NRCS estimated crop residue based on corn yields of 125 bushels/acre and soybean yields of 30 bushels/acre. Appellants' corn and soybeans yields were significantly greater than the crop yields utilized by NRCS (196 bushels/acre for corn and 51 bushels/acre for soybeans). NRCS over-estimated Appellants' soil loss because it did not utilize Appellants' actual crop yields to estimate crop residue. *(Agency Record, pages 197 – 314, and 319; Appellant Exhibits PP, SS, VVVV; Testimony of Appellant Witness, 10-4-05 Hearing, Tape 2, Side 1 and 2)*

5. NRCS State Conservationist XXXXX issued a memorandum dated August 19, 2003, granting Appellants a conservation compliance variance for crop year 2003. XXXXX granted the variance because NRCS staff had made statements to Appellant 1 leading him to believe he was complying with NRCS requirements. *(Appellant Exhibit HHHH)*

6. Appellants have complied with NRCS conservation requirements on all farms for 2005. *(Appellant Exhibit F, pages 153 – 156; Appellant Post-Hearing Exhibit ZZZZ)*

7. Appellants requested a 'good faith' determination from FSA. The FSA County Committee denied the request. *(Agency Record, pages 199, and 214 – 231)*

8. Appellants requested an appeal of the County Committee's denial from the FSA State Committee. On March 29, 2005, the State Committee denied Appellants' appeal. The State Committee reconsidered its decision but upheld it on July 25, 2005. The State Committee found Appellants did not in good faith, apply specific conservation measures outlined by the conservation plan. *(Agency Record, pages 39 – 41, 587 – 588)*

9. In 2004, Appellants' conservation management methods were conducive to erosion control. *(Appellant Exhibit VVVV; Testimony of Appellant Witness, 10-4-05 Hearing, Tape 2, Side 2)*

## DISCUSSION

The rule found at Part 11 of Title 7 of the Code of Federal Regulations (7 C.F.R.) governs the appeal. The rule found at 7 C.F.R. Part 12 govern the issues on appeal.

**Did Appellants meet NRCS erosion control requirements on farm 2 during the 2004 crop year?**

NRCS did not accurately calculate the amount of erosion based on Appellants' actual crop yields, I am therefore unable to conclude whether the amount of erosion is within or exceeds acceptable limits. Regulation at 7 C.F.R. § 12.23(h) states that NRCS considers a person to be applying a conservation plan or system if the plan or system achieves or exceeds a substantial reduction in soil erosion as described in Section 12.23(b). Section 12.23(b) provides that NRCS will compare the measurement of soil erosion under the conservation plan or system to the erosion before the producer applied such a plan or system. Regulations do not allow a substantial increase in erosion. NRCS concluded soil erosion was greater than planned because Appellant did not apply all conservation measures outlined in the conservation plan (FOF 2 and 3). In determining the amount of soil erosion (and crop residue), NRCS estimated Appellants' crop yields rather than using actual crop yields in RUSLE2 (FOF 4). Consequently, NRCS overestimated soil erosion (FOF 4). Consequently, NRCS overestimated soil erosion (FOF 4). NRCS soil erosion estimates are erroneous.

**Was FSA correct to deny Appellants' request for a 'good faith' exemption?**

I conclude FSA erred in denying a 'good faith' exemption. Regulation at § 12.4(a) specifies that all persons are ineligible for USDA program benefits they produce an agricultural commodity on HEL. Regulation at 7 C.F.R. Part 12.5(a) outlines exemptions to ineligibility. One exemption to ineligibility is outlined by Section 12.5(a)(5)(i) and (iii) which provides that no person shall be ineligible for USDA program benefits as a result of the failure of such person to apply a conservation system on HEL if FSA determines such person acted in good faith and without the intent of violating HEL conservation regulations. Regulation at 7 C.F.R. 12 does not define the terms 'good faith' or 'intent.' I therefore give the terms the common meaning as outlined in Black's Law Dictionary (Seventh Edition).

> 'Good Faith' is: "A state of mind consisting in (1) honesty in belief of purpose, (2) faithfulness to one's duty or obligation, (3) observance of reasonable commercial standards or fair dealing in a given trade or business, or (4) absence of intent to defraud or to seek unconscionable advantage."
>
> 'Intent' is: "The state of mind accompanying an act, especially a forbidden act. Whereas motive is the inducement to do some act, intent is the mental resolution or determination to do it. When the intent to do an act that violates law exists, motive becomes immaterial."

The conservation plan Appellant 1 executed for farm 2 included nine general conservation practices - conservation crop rotations, critical area planting, field borders, filter strips, nutrient management, pest management, no till residue management, contour farming, and grassed waterways (FOF 1). Appellants complied with six conservation practices (FOF 1 and 3) and NRCS deemed Appellants in compliance with all required conservation practices for 2005 (FOF 6). Appellants' conservation methods effectively controlled erosion in 2004 (FOF 9). FSA's denial of a 'good faith' exemption focuses on whether Appellants, in good faith, applied specific conservation practices [i.e. did Appellants in good faith plant on the contour, or establish waterways, etc] rather than an overall conservation system (FOF 8). The above regulation looks to whether a person is attempting to apply an overall conservation system rather than a specific aspect of a conservation plan as FSA decided. I find no evidence that it was Appellants

resolve or 'intent' to violate the conservation plan. Even if NRCS soil erosion calculations were correct, I find that by definition, Appellants acted in 'good faith' because they acted without intent to defraud or to seek unconscionable advantage and attempted to implement a conservation system.

*Eqitable relief:* Appellants request equitable relief in this case. A NAD Hearing Officer has no authority to make a determination on equitable relief. In accordance with 7 C.F.R. § 11.9(e), the Director of NAD has the authority to grant equitable relief to the same extent such authority is provided an agency. While I cannot make a determination on this matter, a NAD Hearing Officer is responsible for developing the record to enable the Director to make a determination as to whether he should grant relief. I gave Appellants the opportunity in person and in documents to make a record to support a claim for equitable relief. If Appellants wish to request equitable relief, Appellants should request equitable relief in a request for Director review.

**DETERMINATION**

Seven C.F.R. § 11.8(e) provides that all appellants bear the burden of proving and agency's adverse decision erroneous by a preponderance of the evidence. Appellants have met that burden. NRCS erred in its soil loss estimation and FSA erred in denying a 'good faith' exemption.

This is a final determination of the Department of Agriculture unless a timely request for review is filed.

Dated and mailed this 23rd day of November 2005.

MICHEAL R. STEWART
Hearing Officer
National Appeals Division

Attachments:
Notice of Right to Request Director Review and/or Copy of Audio Recording
Request for Director Review

**EXHIBIT 3**

**UNITED STATES DEPARTMENT OF AGRICULTURE**
**OFFICE OF THE SECRETARY**
**NATIONAL APPEALS DIVISION**

| | | |
|---|---|---|
| In the Matter of | ) | |
| | ) | |
| XXXXX | ) | |
| XXXXX | ) | |
| | ) | |
| And | ) | Case No. 2005E000786 |
| | ) | |
| FARM SERVICE AGENCY | ) | |

---

## APPEAL DETERMINATION

XXXXX (Appellant 1) and XXXXX (Appellant 2) filed an appeal challenging a Farm Service Agency (FSA) decision issued March 29, 2005. FSA denied Appellants' request for a 'good faith' exemption citing Appellants' non-compliance with a conservation plan on highly erodible land (HEL). FSA based its decision on a Natural Resource Conservation Service (NRCS) technical determination that Appellants failed to fully implement a conservation plan on three of Appellants' farms. The three farms are the XXXXX farm (Case No. 2005E000784); the XXXXX farm (Case No. 2005E000785); and the XXXXX farm (Case No. 2005E000786). This determination is specific only to the XXXXX farm which I will hereafter refer to as farm 3. Appellants argued they vigorously practice conservation on all of their farms. Appellants argue NRCS overestimates the soil erosion from the conservation measures they employ. Appellants also request that the National Appeals Division (NAD) grant equitable relief.

I held a face-to-face hearing on October 4, 2005, which continued through October 5, 2005. I left the hearing record open until October 28, 2005, to allow the parties the opportunity to review the extensive documentation, the testimonies provided at the hearing, and provide any final comments. The record closed October 28, 2005. I reviewed all evidence presented. Based on the evidence and the arguments submitted by the parties, and the program regulations that apply to this situation, I conclude NRCS erred in its soil loss estimation and that FSA erred in denying a 'good faith' exemption. The rationale for my decision follows.

### STATEMENT OF THE ISSUES

I had to resolve the following issues in order to reach my decision.

1. Did Appellants meet NRCS erosion control requirements on farm 3 during the 2004 crop year?
2. Did FSA correctly deny Appellants' request for a 'good faith' exemption?

### FINDINGS OF FACT (FOF)

1. In April 2003, Appellant 1 and NRCS signed a Conservation Plan for farm 3 (tract 1549). Appellant 1 agreed to numerous conservation practices including conservation crop rotations, critical area planting, no-till residue management, field borders, contour farming, grassed waterways, and terraces.

2. NRCS conducted a field visit and completed a status review of farm 3 on May 17, 2004, to determine if Appellants were complying with the Conservation Plan. The "Status Review Decision" of the District Conservationist (DC) was that Appellants were not actively applying a conservation system that meets HEL conservation requirements on fields 3b, 9a, 9b, 9c, and 10. Specifically, the DC indicated terraces were not being maintained and that contour farming was not being used in fields 9a, 9b, 9c, and 10. The DC also concluded Appellants did not treat ephemeral or short-term erosion in field 3b where two waterways were planned. NRCS surmised that Appellants did not comply with the conservation plan resulting in soil loss greater than planned. (Agency Record, pages 544, 559 – 566

3. NRCS calculated soil loss estimates using the second revised universal soil loss equation (RUSLE2). Crop residue is a key factor in RUSLE2. Greater crop yields result in more crop residue. In calculating soil loss in fields 9c and 10, NRCS estimated crop residue based on corn yields of 125 bushels/acre and soybean yields of 40 bushels/acre. In calculating soil loss in fields 9a and 9b, NRCS estimated crop residue based on corn yields of 89 bushels/acre and soybean yields of 30 bushels/acre. Appellants' corn and soybeans yields were significantly greater than the crop yields utilized by NRCS (196 bushels/acre for corn and 51 bushels/acre for soybeans). NRCS over-estimated Appellants' soil loss because it did not utilize Appellants' actual crop yields to estimate crop residue. (Agency Record, pages 562, 565, 566; Appellant Exhibits PP, SS, VVVV; Testimony of Appellants' Witness, 10-4-05 Hearing, Tape 2, Side 1 and 2)

4. NRCS State Conservationist XXXXX issued a memorandum dated August 19, 2003, granting Appellants a conservation compliance variance for crop year 2003. XXXXX granted the variance because NRCS staff had made statements to Appellant 1 leading him to believe he was complying with NRCS requirements. (Appellant Exhibit HHHH)

5. Appellants have complied with NRCS conservation requirements on all farms for 2005. (Appellant Post-Hearing Exhibit ZZZZ)

6. Appellants requested a 'good faith' determination from FSA. The FSA County Committee denied the request. (Agency Record, page 482 - 483)

7. Appellants requested an appeal of the County Committee's denial from the FSA State Committee. On March 29, 2005, the State Committee denied Appellants' appeal. The State Committee reconsidered its decision but upheld it on July 25, 2005. The State Committee found Appellants did not in good faith, apply specific conservation measures outlined by the conservation plan. (Agency Record, pages 43 – 45, 587 – 588)

8. In 2004, Appellants' conservation management methods were conducive to erosion control. (Appellant Exhibit VVVV; Appellants' Witness Testimony, 10-4-05 Hearing, Tape 2, Side 2)

**DISCUSSION**

The rule found at Part 11 of Title 7 of the Code of Federal Regulations (7 C.F.R.) governs the appeal. The rule found at 7 C.F.R. Part 12 govern the issues on appeal.

**Did Appellants meet NRCS erosion control requirements on farm 3 during the 2004 crop year?**

NRCS did not accurately calculate the amount of erosion based on Appellants' actual crop yields and I am therefore unable to conclude whether the amount of erosion is within or exceeds acceptable limits. Regulation at 7 C.F.R. § 12.23(h) states that NRCS considers a person to be applying a conservation plan or system if the plan or system achieves or exceeds a substantial reduction in soil erosion as described in Section 12.23(b). Section 12.23(b) provides that NRCS will compare the measurement of soil erosion under the conservation plan or system to the erosion before the producer applied such a plan or system. Regulations do not allow a substantial increase in erosion. NRCS concluded soil erosion was greater than planned because Appellants did apply all conservation measures outlined in the conservation plan (FOF 2). In determining the amount of soil erosion (and crop residue), NRCS estimated Appellants' crop yields rather than using actual crop yields in the RUSLE2 (FOF 3). Consequently, NRCS overestimated soil erosion (FOF 3). NRCS soil erosion estimates are erroneous.

**Was FSA correct to deny Appellants' request for a 'good faith' exemption?**

I conclude FSA erred in denying a 'good faith' exemption. Regulation at 7 C.F.R. § 12.4(a) specifies that all persons are ineligible for USDA program benefits if they produce an agricultural commodity on HEL. Regulation at 7 C.F.R. Part 12.5(a) outlines exemptions to ineligibility. One exemption to ineligibility is outlined by Section 12.5(a)(5)(i) and (iii) which provides that no person shall be ineligible for USDA program benefits as a result of the failure of such person to apply a conservation system on HEL if FSA determines such person acted in good faith and without the intent of violating HEL conservation regulations. Regulation at 7 C.F.R. 12 does not define the terms 'good faith' or 'intent.' I therefore give the terms the common meaning as outlined in Black's Law Dictionary (Seventh Edition).

> 'Good Faith' is: "A state of mind consisting in (1) honesty in belief of purpose, (2) faithfulness to one's duty or obligation, (3) observance of reasonable commercial standards or fair dealing in a given trade or business, or (4) absence of intent to defraud or to seek unconscionable advantage."
>
> 'Intent' is: "The state of mind accompanying an act, especially a forbidden act. Whereas motive is the inducement to do some act, intent is the mental resolution or determination to do it. When the intent to do an act that violates law exists, motive becomes immaterial."

The conservation plan Appellant 1 executed for farm 3 included seven general conservation practices - conservation crop rotations, critical area planting, no-till residue management, field borders, contour farming, grassed waterways, and terraces (FOF 1). Appellant complied with four conservation practices (FOF 1 and 3) and NRCS deemed Appellants in compliance with all required conservation practices in 2005 (FOF 5). Appellants' conservation methods effectively controlled erosion in 2004 (FOF 8). FSA's denial of a 'good faith' exemption focuses on whether Appellants, in good faith, applied specific conservation practices [i.e. did Appellants in good faith plant on the contour, or establish waterways, etc] rather than an overall conservation system (FOF 7). The above regulation looks to whether a person is attempting to apply an overall conservation system rather than a specific aspect of a conservation plan as FSA decided. I find no evidence that it was Appellants resolve or 'intent' to violate the conservation plan. Even if NRCS soil erosion calculations were correct, I find that by definition, Appellants acted in 'good faith' because they acted without intent to defraud or to seek unconscionable advantage and attempted to implement a conservation system.

*Eqitable relief:* Appellants request equitable relief in this case. A NAD Hearing Officer has no authority to make a determination on equitable relief. In accordance with 7 C.F.R. § 11.9(e), the

Director of NAD has the authority to grant equitable relief to the same extent such authority is provided an agency. While I cannot make a determination on this matter, a NAD Hearing Officer is responsible for developing the record to enable the Director to make a determination as to whether he should grant relief. I gave Appellants the opportunity in person and in documents to make a record to support a claim for equitable relief. If Appellants wish to request equitable relief, Appellants should request equitable relief in a request for Director review.

**DETERMINATION**

Seven C.F.R. § 11.8(e) provides that all appellants bear the burden of proving and agency's adverse decision erroneous by a preponderance of the evidence. Appellants have met that burden. NRCS erred in its soil loss estimation and FSA erred in denying a 'good faith' exemption.

This is a final determination of the Department of Agriculture unless a timely request for review is filed.

Dated and mailed this 23rd day of November 2005.

MICHEAL R. STEWART
Hearing Officer
National Appeals Division

Attachments:
Notice of Right to Request Director Review and/or Copy of Audio Recording
Request for Director Review

**EXHIBIT 4**

LWM

DominaLaw Group pc llo
dominalaw.com

2425 S. 144th St.
Omaha NE 68144-3267

5000 Town Center Dr., Ste. 901
Southfield MI 48075

615 Boardman St.
Sheffield MA 01257

(402) 493-4100
(800) 245-5801

David A. Domina NE NY MI MO
James F. Cann NE
Claudia L. Stringfield-Johnson NE IA
Timothy G. Himes Sr NE SD
Michael C. Sturno NE CT

Appeal letter To COC

January 25, 2006

Sent via fax only - 712.423.3385

RECEIVED
MAR 29 2006
OGC - USDA
KC REGIONAL OFFICE

Ms. Susan Badding
Monona County FSA Office
PO Box 118
Onawa, IA 51040-0118

Re: Request for Restoration of Benefits
Alan and Calvin Bruhn
Our File No. 05-0146

Ms. Badding:

1. I am writing to pursue restoration of 2004 farm program benefits and damages arising from the NRCS and FSA 2004 benefit denial for Alan and Calvin Bruhn. I appreciate your collaborative assistance on this issue.

2. In the telephone call today with you and Mr. John Awtry, Mr. Awtry represented we need only go through the Monona County FSA for all issues, rather than also pursuing this matter in Woodbury County. Thus, this request is going only to your office.

3. The 2004 benefit denial was based upon an NRCS determination now determined incorrect. The Bruhns believed, in 2004, they would receive a good faith determination as in past years, but of course did not until the November 2005 NAD Hearing Officer decision.

4. These are the sums we believe are owed.

   4.1. Disaster payments - $60,000.00. You indicated you were sending this money out, but did not state how much.

   4.2. Direct and counter-cyclical payments - $240,000.00. The three entities involved with the 2004 benefit denial (Alan, Sheryl and Calvin) should each have received

the $40,000 maximum for direct payments and the $40,000 maximum for counter-cyclical payments. We do not represent Sheryl, but the NAD decision should be applicable to her portion.

4.3. LDP - $344,367.87. The Bruhns produced 1,043,539 bushels of corn in 2004. The PCP to market price differential is 33 cents for October 2004.

4.3.1. There is a fact issue about whether the Bruhns applied for LDP. Alan states he sought to apply but was told to wait and see how things worked out. I understand your recollection differs. This distinction will be resolved later, perhaps. I think we agree Alan Bruhn had a good faith and reasonable belief that applying for LDP funds in 2004 would have been futile, that the situation would be resolved similar to the 2003 non-compliance issue, and that FSA would restore LDP funds (if the appeal was successful) despite the lack of formal application in 2004.

4.4. Soybean sealing denial - $506,189.28. The Bruhns could have sealed soybeans for $4.90 on October 20, 2004, but could not because of program benefit denial. Their marketing practice was to seal, then sell in the higher next-June market. Instead, the Bruhns were forced to sell all 186,099 bushel at $4.68 in October 2004 for cash flow. This is a 22 cent differential ($4.90 - $4.68). But-for the denial, the Bruhns would have sealed the soybeans and sold at $7.40 in June 2005. The difference between $4.90 and $7.40 is $2.50. The $2.72 cumulative differential on 186,099 bushels of soybeans is $506,189.28.

4.5. Market losses from LDP denial - $531,161.69. The Bruhns' corn marketing practice is to sell 50-60% ahead, during the summer prior to the fall harvest. Then sell the rest of the crop in June the next year. The Bruhns sold 25% in Summer 2004 for $3.00, but stopped selling after farm program denial. This forced a fall corn crop sale at $1.68/bushel for the remaining 734,539 bushels of corn. But-for program denial, the Bruhns would have sold an additional 25%, or 260,885 bushel, for $3.00 per bushel, or $1.37 more than the $1.63. This totals a $357,412.45 loss. But-for program denial, the Bruhns would have sold the remaining 469,593 corn bushels on or about June 1, 2005 for $2.00. This 37 cent differential caused $173,749.24 in losses. The total is $531,161.69.

4.6. Interest claims for money lost - $79,753.39.

4.6.1. Disaster payments - $2,450. $60,000 payable June 1, 2005, 7% interest ($350/month), seven months interest.

4.6.2. Direct and Counter-Cyclical - $26,600. $240,000 gross, available June 1, 2004, 7% interest ($1,400/month), 19 months.

4.6.3. Soybean sealing - $22,580.01:

4.6.3.1. 22 cents lost from 11/1/04, $40,941.78 gross, 7% interest ($238.82/mo), 15 months, $3,582.40.

4.6.3.2. 2.50 lost from 6/1/05, $465,247.50, 7% interest (($2,713.94/mo), 7 months, $18,997.61.

4.6.4. LDP - $28,123.38. $344,367.87 lost from 12/1/04, 7% interest ($2,008.81/mo), 14 months.

4.7. We intend to request attorneys fees and expert witness fees for costs in achieving the NAD Hearing Officer decision on appeal. I am under no illusion you will grant this at the County Committee level, but wish you to merely address this sub-issue in your decision.

4.8. I realize these numbers are large, but perhaps you will agree they are objective. Consider that 10,000 acres of land, cash rented at $120 average is a $1,200,000 bill without other costs. These numbers show why the Bruhn farm is in dire financial straights, with bank support dwindling or gone. Alan Bruhn has sold large machinery (combines and tractors), which was fully paid, so he could lease it back. Alan had to cash out his life insurance policy.

4.9. I encourage you to provide all benefits you believe you can award in an expeditious matter. Your intent is to do so, I realize, by calling a special County Committee meeting. Thank you for your cooperation.

Respectfully,

Michael C. Stumo

MCS/rsa