**No. 06-258**
**(Judge Christine O.C. Miller)**

---

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

---

**ALAN BRUHN and CALVIN BRUHN,**

**Plaintiffs,**

**v.**

**THE UNITED STATES,**

**Defendant.**

---

# PROPOSED AMENDED COMPLAINT

---

## Case Summary

1. Alan Bruhn and his son, Calvin Bruhn, are Mapleton, Iowa, row crop farmers. They farm approximately 11,000 acres under lease in Woodbury, Monona and Crawford counties. USDA and its employees have been working vigorously to run them out of business through arbitrary and discriminatory application of fictitious conservation standards designed to deny benefits to the Bruhns, otherwise allowed pursuant to the *Farm Security and Rural Investment Act of 2002* (Farm Bill).

2. The Bruhns have been subjected to violations of contractual and constitutional rights by USDA and its agencies: the Commodity Credit Corporation (CCC), the Farm Service Agency (FSA) and the Natural Resources Conservation Service (NRCS). These agencies singled out the Bruhns, breached their contract, treated them differently from others, and wrongfully caused Plaintiffs to lose their federal farm program benefits in 2004. Without Farm Bill benefits, most U.S. farmers cannot financially survive, because bank lenders depart them and commodity prices are below

breakeven prices. The Bruhns are no different, and are now threatened with bankruptcy because of USDA's intentional, reckless and wrongful actions.

3. The Bruhns request judgment for them on contractual, Equal Protection and Due Process grounds.

**Jurisdiction**

4. This Court has jurisdiction under 28 *USC* § 1491 because Plaintiffs assert claims against the United States founded upon the Constitution, acts of Congress, regulations of the U.S. Department of Agriculture, and express or implied contracts with the United States Department of Agriculture.

**Parties**

5. Alan and Calvin Bruhn, father and son, are residents of Mapleton, Iowa. They raise corn and soybeans on land leased from others.

6. Alan Bruhn also pursues this action on behalf of Sheryl Bruhn, through a Power of Attorney granted by Sheryl Bruhn to Alan Bruhn. Sheryl Bruhn was a farm "entity" for USDA Farm Program purposes entitled to receive benefits. The facts alleged in the Complaint are equally applicable to Alan Bruhn as Power of Attorney for Sheryl Bruhn. The damages sought are equally available to Alan Bruhn as Power of Attorney for Sheryl Bruhn.

7. The United States Department of Agriculture (USDA) is an agency of the United States created and generally charged with functions defined at 7 *USC* § 202.

**USDA Agencies**

8. The Commodity Credit Corporation (CCC) is a federally-owned and operated corporation within USDA created to stabilize, support, and protect agricultural prices and farm income through loans, purchases, payments, and other operations. Corn and soybean farmers are subjected to certain USDA rules by signing a contract with the CCC to receive Farm Program benefits.

9. The Farm Services Agency (FSA) carries out many Farm Bill responsibilities including Farm Credit, Farm Programs, Commodity Operations, Management and State Operations.

10. The Natural Resources Conservation Service (NRCS) is the USDA agency responsible for developing national soil and water programs in cooperation with landowners, operators and others. It is formerly known as the Soil Conservation Service.. NRCS carries out soil conservation compliance reviews on land under Farm Bill program contracts.

**Important Non-Parties**

11. Jerry Sindt is the Woodbury County, Iowa District Conservationist employed by USDA-NRCS. His office is located at 206 First Street, PO Box 725, Sergeant Bluff, Iowa 51054.

12. Kathy Schneider is the Monona County, Iowa District Conservationist employed by USDA-NRCS. Her office is located at 22859 Filbert Avenue, PO Box 118, Onawa, Iowa 51040.

13. Michael Musel is an employee of the Iowa Farm Services Agency State office. His address is 10500 Buena Vista Court, Des Moines, Iowa 50322.

14. Susan J. Badding is the Monona County, Iowa FSA Executive Director. Her address is 2631 Iowa Avenue, PO Box 118, Onawa, Iowa 51040. Ms. Badding signed the Bruhn Direct and Counter-Cyclical Program Contract for the CCC.

15. Derryl McLaren is the FSA Iowa State Executive Director. His address is 10500 Buena Vista Court, Des Moines, Iowa 50322.

16. Jon Awtry is an FSA District Director. His office address is 2519 Southwest Avenue, PO Box 284, Harlan, Iowa 51537.

17. Richard Van Klaveren is the NRCS Iowa State Conservationist. His office address is 693 Federal Building, 210 Walnut, Des Moines, Iowa 50309.

18. Astor Boozer is NRCS Assistant State Conservationist for Field Operations.

**Farm Operational History**

19. Alan Bruhn has been farming since 1987, and is the primary manager of the Bruhn farm operation. His son, Calvin, has joined in the farming operation since the year 2000. The Bruhns are recognized among soil conservationists as

accomplished in soil erosion prevention on their fields in the Loess Hills of Western Iowa.

20. Representatives from Iowa State University's National Soil Tilth Laboratory and other university Agronomy Departments have toured the Bruhn farm to view Alan Bruhn's exemplary soil erosion control methods. Expert agronomists say they have seen no better conservation practices.

21. Mr. Bruhn uses modern techniques to effectively halt soil erosion on his land. He plants high populations of corn plants per acre, up to 36,000 plants per acre instead of the standard plant population, 30,000 plants per acre. He applies high fertilization rates to cause the crops to grow healthy with much plant material and corn kernels in each acre. Mr. Bruhn uses a no-till approach to plant his crops. This means that he never cultivates the soil with moldboard plows, chisel plows or other tillage instruments except under extenuating circumstances.

22. Tillage elimination keeps the soil in place; provides dense prior year plant residue soil coverage from corn stalks and leaves; and thus rain and wind have little direct soil contact to cause erosion. Similar landscapes in the area are treated with less care than the Bruhn farms often resulting in erosion, gullying, and low land soil deposition.

23. Traditional soil erosion control methods include terracing steep slopes, planting on the contour (planting roughly perpendicular to downward field slopes), and planting grass waterways to slow downhill water travel. These older and classical methods of soil erosion control are recognized as far less effective than the Bruhns' high population, high fertility, high residue no till approach. Terracing, contouring and grass waterways stops or slows water carrying soil after it has traveled some distance downhill.

24. The comprehensive Bruhn method stops soil erosion from starting. This is because rain drops are deflected by plant residue cover before hitting the soil, residual root systems hold the soil, and thus water cannot carry soil away. Thus, water-

born soil erosion momentum never begins and terraces and waterways become irrelevant, though the Bruhns use these traditional methods also.

**25.** Throughout the 1990s, Alan Bruhn was found in compliance with all conservation-related requirements to receive U.S. Farm Program benefits. Mr. Bruhn farmed with the same high population, high fertility, no till methods in the 1990s as in the present decade. Indeed, before the USDA campaign described here began, Neil Stockfleth, former Woodbury County NRCS District Conservationist said "Alan, you are doing great, keep doing what you are doing" with regard to soil conservation.

**Contracts, Statutes and Regulations**

26. The Bruhns were subjected to USDA regulations and cropland oversight via contract. Farmers have no obligation to comply with USDA conservation regulations unless they participate in the Farm Bill program to receive loans and payments from the government. Most producers, including the Bruhns, agree to subject themselves to Farm Bill rules relating to soil conservation and other matters to receive Farm Bill benefits.

27. Alan Bruhn entered into Farm Bill contracts with the CCC for the 2002, 2003 and 2004 crop years. He did so for himself, his son Calvin and his then-wife Sheryl.

28. The Bruhns also agreed to allow representatives of the CCC to enter his land to determine compliance. NRCS representatives carry out this soil conservation compliance monitoring function in practice for the CCC.

29. Soil conservation compliance monitoring sometimes includes a Conservation Plan designed by NRCS and the farmer.

30. The contracts obliged the Bruhns to comply with USDA regulations including the Highly Erodible Land (HEL) provisions of the Farm Bill and underlying regulations. 16 USC § 3811 et seq.; 7 CFR Part 12.

31. These are the relevant rules:

31.1. Farmers shall not be found Farm Bill program ineligible for failure to actively apply a Conservation Plan if they acted in good

faith and without intent to violate the HEL rules. 16 USC § 3812(f)(1); 7 CFR 12.4.

31.2. Farmers shall not be found Farm Bill program ineligible for failure to actively apply a Conservation Plan if the violation is (a) technical and minor; (b) due to circumstances beyond the control of the farmer; or (c) a variance is granted by the USDA. 16 USC § 3812(f)(4).

31.3. The USDA must provide the farmer Conservation Plan options which are cost effective while meeting soil erosion goals. 16 USC § 3812(g).

31.4. The Conservation Plan standards must be: (a) technically and economically feasible; (b) based upon local resource conditions and available conservation technology; (c) cost effective; and (d) must not cause undue economic hardship to the farmer. 16 USC § 3812a(a).

31.5. Farmers may self-certify compliance with the HEL provisions. 16 USC § 3812a(d).

31.6. If HEL is newly included in an existing field, the entire field will not be subjected to the higher standard. *National Food Security Act Manual(NFSA Manual)* § 512.02.

31.7. If HEL fields are converted from native vegetation after 1985, no substantial increase in erosion is allowed. *NFSA Manual* § 512.01.

31.8. If HEL fields have a crop history, a substantial reduction in soil erosion must occur. *NFSA Manual* § 512.01.

32. Susan Badding of the Monona County FSA signed the contracts for the USDA's CCC.

33. The USDA's CCC agreed to provide Farm Bill benefits including these: Direct Payments, Counter Cyclical Payments, Disaster Payments, Loan Deficiency Payments, Soybean Sealing loans.

**Facts Relating to USDA Wrongdoing**

34. In 2000, Alan Bruhn leased land owned by Robert Peterson, the late chief executive officer of meat packing giant, IBP, inc. Mr. Bruhn caused some of this land to be transformed from pasture to crop production. Local and state Farm Service Agency and Natural Resource Conservation Service officials were subjectively dismayed this land was being farmed. USDA and its staff engaged in a comprehensive campaign to harshly treat Alan and Calvin Bruhn in the form of unfair farm program conservation compliance reviews and investigations based solely upon antipathy to the Bruhns. This campaign started in 2000 and continued five (5) years.

35. From 1987 to 2000, the Bruhn conservation methods were acceptable and praised by NRCS and others. In 2002 and 2003, the same Bruhn consistent conservation methods were deemed non-compliant by the USDA. NRCS staff Kathy Schneider, Jerry Sindt and Astor Boozer required the Bruhns to install impractical, expensive, and ineffective practices such as excessively large waterways, and constant corn crops year after year.

36. The excessively stringent Conservation Plan exceeded that allowed by the Farm Bill and regulations incorporated into the contract signed by the Bruhns. NRCS then found the Bruhns non-compliant with the Conservation Plan in both the 2002 and 2003 crop years. The Bruhn's were deemed non-compliant temporarily, but ultimately persuaded USDA to allow them to receive most Farm Bill benefits. These actions constituted a contract breach by USDA.

37. The non-compliance findings occurred despite prior assurances by local NRCS and FSA staff that Mr. Bruhn was complying with his contract, following the Conservation Plan he signed, and continuing to engage in proper conservation practices.

These assurances were contract noncompliant and part of a willful campaign to halt the Bruhns from farming some of their land.

38. Then-NRCS Iowa State Conservationist, Dr. LeRoy Brown acknowledged NRCS wrongdoing in an August 19, 2003 letter stating:

> Statements over time have been made by NRCS staff which would have led Mr. Bruhn to conclude he was doing what is required.
>
> Continue what you are doing (conservation practices) and if any erosion problems occur, they can be fixed at that time.
>
> When in the field building waterways, if there is no erosion on the site, don't bother to construct a waterway or you can make them narrowed to fit the erosion problem.
>
> When asked if waterways had to be to specified dimensions, the response was 'within reason'.

39. Mr. Brown, in the same letter, directed NRCS staff in this way:

> It must be clear that a conservation plan including practice designs for the tracts is to be developed assigned by October 1, 2003 [for the 2004 planting season] . . . . The plan is not to require more ephemeral erosion control than other similar landscapes in the vicinity of the tracts, and treatment requirements should be similar for similar landscapes and farming systems on all farms associated with Mr. Bruhn.
>
> When planting ephemeral erosion control, be sure all options (water and sediment control bases, grass waterways, critical area seedings, etc.) are presented to Mr. Bruhn. Once decisions are made, be clear on locations and dimensions to be built and/or seeded.

40. NRCS did not heed Mr. Brown's directives or comply with the rules. They continued harassing the Bruhns, singling them out for unfair treatment, and applying arbitrary rules to them without rational basis. These same standards were not applied to farmers cultivating similar landscapes in the area. When Mr. Bruhn told NRCS staff they cannot apply discriminatorily high standards to him, Defendant Sindt responded "Yes we can, you're high profile."

41. On December 16, 2003, Mr. Bruhn signed his 2004 crop year contract with USDA. (Exhibit 1). In March 2004, NRCS imposed a Conservation Plan

on certain Bruhn fields in Woodbury and Monona counties that contained standards not allowed or required under the Farm Bill, the regulations or NRCS policies.

42. This Conservation Plan was created by NRCS for Mr. Bruhn using fictitiously high Super Sod Bust and other discriminatory standards for waterways and terraces. Kathy Schneider and Woodbury County District Conservationist Jerry Sindt led Mr. Bruhn to believe the standards were higher for land taken from pasture to no-till corn under his circumstances. But there were no Super Sod Bust standards in existence. This was a arbitrary creation of NRCS and FSA designed to set the Bruhns up for noncompliance findings and loss of farm program benefits.

43. NRCS forced Mr. Bruhn tried to work with Monona and Woodbury County District Conservationists Kathy Schneider and Jerry Sindt, respectively, to become compliant under the so-called Super Sod Bust standards, but both refused stating "it is out of our control." This was one set of many statements indicating the USDA campaign to target the Bruhns. Similar fields with similar landscapes farmed by others in the area, were not held to the same arbitrary standards. The similarly situated fields had higher soil erosion, less stringent conservation practices, were found compliant with USDA conservation rules.

44. On or about May 25, 2004, NRCS singled out the Bruhn farm for a so-called Compliance Review to determine non-compliance with the Conservation Plan. NRCS had a contractual duty of good faith to apply proper standards in assessing the land. But NRCS used improper standards to make their determination. These actions were intentionally and recklessly discriminatory in relation to NRCS standards imposed upon other farmers similarly situated.

45. On June 1, 2004, NRCS Monona County District Conservationist Kathy Schneider notified the Bruhns they were not "actively applying a conservation plan." The non-compliance finding occurred in both Woodbury and Monona Counties.

46. These were the allegations asserted by NRCS to drive the Bruhns out of the farm program:

46.1. Estimated soil loss was 9.3 tons per acre instead of the allowable 4 tons per acre.

46.2. Lack of waterways that NRCS specifically told Mr. Bruhn were not needed.

46.3. Farming over terraces, which were older than anyone could remember and not part of the regulatory framework.

47. Mr. Bruhn tried to work with Monona and Woodbury County District Conservationists Kathy Schneider and Jerry Sindt, respectively, to become compliant under the so-called Super Sod Bust standards, but both refused stating "it is out of our control." Similar fields with similar landscapes, but less meticulous conservation practices, and higher actual soil erosion in the area were found compliant because USDA had not targeted those farmers in an arbitrary and intentional discrimination campaign.

48. Alan Bruhn requested reconsideration, but NRCS reiterated the non-compliance finding in a July 28, 2004 letter. Mr. Bruhn was also found non-compliant by Woodbury County NRCS.

49. The Bruhns had the right to seek a county-level FSA finding, they were acting in good faith and without intent to violate the HEL rules. The Woodbury County FSA Committee found good faith.

50. Plaintiff believes, but does not know, the Woodbury County FSA Committee "good faith" finding documents subsequently disappeared. Plaintiff believes this disappearance resulted from intentional hiding or destroying these documents. Plaintiff sought these documents in the following months, but FSA and NRCS failed and refused to provide them to the Bruhns or their agents.

51. But the Monona County FSA Committee, which was part of the USDA discrimination campaign against the Bruhns, denied a good faith finding on August 12, 2004 based upon the very same factual considerations as Woodbury County found good faith.

52. A very small portion of the Bruhn land was actually within the arbitrary Super Sod Bust rules created by NRCS – less than one percent (1%) of 11,000

acres. But FSA breached the contract by denying all Farm Bill benefits to the Bruhns for 2004. These Farm Bill program benefits were denied: direct and counter-cyclical program benefits, soybean sealing program benefits, loan deficiency program benefits and disaster payment benefits.

53. On September 23, 2004, the Bruhns requested reconsideration of the Monona County FSA Committee denial. But the FSA County Committee, including Susan Badding, was participating in the campaign to target the Bruhns. Ms. Badding is a member of, and effectively leads, the Monona County FSA Committee, which denied this appeal wrongfully. The denial was due to in large part to Ms. Badding's leadership. Other committee members are local farmers without detailed knowledge of USDA regulations.

54. The Bruhns were dissuaded from applying for certain farm program benefits, including Loan Deficiency Payment and Soybean Sealing programs, by Susan Badding in the Fall of 2004. Ms. Badding cited the Conservation Plan noncompliance as the reason.

55. The Bruhns requested reconsideration of the FSA refusal to make a "good faith" finding. The Monona County FSA Committee again stated its refusal to do so in a November 2004 meeting.

56. The Bruhns then appealed to the Iowa State Farm Services Agency Committee. They had a right to do this under USDA procedures.

57. The Bruhns participated in mediation with FSA staff including Mike Musel. This mediation was an option the Bruhns were offered under standard USDA procedures. During this mediation, Mr. Musel indicated he would not fairly and objectively consider this appeal. Mr. Musel stated that when he found the Robert Peterson land was going to be farmed by Alan Bruhn, "it came into my office and across my desk that that ground should never be farmed."

58. Mediation was unsuccessful, and the Bruhns proceeded with their appeal.

59. On March 29, 2005, the Iowa State FSA Committee denied the Bruhns' appeal. During the public hearing on this appeal, Mr. Musel and state FSA staff members were laughing and mouthing words disrespectfully to State Committee members during the argument. The State Committee members refused to pay attention and exhibited closed minds because they had previously decided to deny the Bruhns' appeal in prior non-public discussions. The State Committee did so deny the appeal.

60. The Bruhns requested a State FSA Committee reconsideration. The reconsideration occurred, but yet another denial of benefits resulted on July 25, 2005.

61. The Bruhns appealed the State FSA Committee decision to the National Appeals Division of USDA. The Bruhns sought reversal of the non-compliance finding and/or a determination they acted in good faith and without an intent to violate HEL rules.

62. The National Appeals Division hearing officer agreed with the Bruhns. NAD found the NRCS wrongly determined excessive soil erosion. The hearing officer also found the Farm Service Agency was wrong in denying Mr. Bruhn a "good faith" exemption. This determination issued November 23, 2005. During the hearing, USDA officials put on no witnesses to defend its position, because no witnesses could defend its position. The decision shook USDA's subagencies, FSA and NRCS. But the Hearing Officer did not order a reimbursement amount.

63. Thereafter, the Iowa State Conservationist Richard Van Klaveren of USDA's Natural Resources Conservation Service wrote a December 14, 2005 and December 28, 2005 letter to Mr. Bruhn admitting NRCS and FSA staff incorrectly denied farm program benefits to the Bruhns. NRCS issued a "post-mortem" variance to the Bruhn farm, eighteen months after the non-compliance finding.

64. The economic damage to the Bruhn farm operation was substantial and may be economically fatal. Mr. Bruhn is unable to pay his bills, has been deserted by his bank and may be forced out of farming. Mr. Bruhn fought the weather, the markets and the crop pests since 1987 to build his operation from zero to 11,000 acres and several employees. Fighting the government's targeted and discriminatory campaign has been

far more damaging. USDA's willful, arbitrary and discriminatory actions have nearly bankrupted the Bruhns.

## First Claim: Breach of Contract

65. The farm program contracts for the 2002, 2003 and 2004 crop years bound the Bruhns and USDA. The Bruhns agreed to follow conservation plan requirements in return for USDA providing farm program benefits. These benefits included direct and counter-cyclical payments, disaster payments, and loan deficiency payments.

66. USDA was obliged to apply the same conservation standards to the Bruhns, as were applied to other farmers, and in accordance with the regulations referred to in the contract. USDA also had a duty of good faith and fair dealing, requiring no abuse of discretion and abiding by the legitimate expectations of the parties.

67. USDA's NRCS imposed wrongful Conservation Plan standards, and wrongly found the Bruhns non-compliant with the standards. The government's conservation non-compliance determination was claimed as a Bruhn contract breach purportedly justifying USDA withholding farm program benefits. But no Bruhn breach occurred.

68. The Bruhns complied, at all times, with their contract obligations.

69. USDA's benefit denial and discriminatory conservation non-compliance determination were a material contract breach. Despite NAD determining this fact, USDA has failed and refused to provide the benefits and pay the damages caused by their wrongful contract breach.

70. As a result, Mr. Bruhn has suffered these damages:

70.1. Loan deficiency program payments.

70.2. Inability to seal soybeans causing direct, incidental and consequential losses.

70.3. Direct and counter-cyclical payments.

70.4. Attorneys fees.

70.5. Expert witness fees.

70.6. Interest.

70.7. Lost marketing opportunities.

70.8. Increased interest rate.

70.9. Inability to purchase inputs at optimum prices at the beginning of the year due to lack of farm program revenue.

**Second Claim: Equal Protection**

71. Mr. Bruhn is a citizen of the United States and a farmer entitled to farm program benefits. His farms in the Loess Hills of western Iowa are managed in a conservation and erosion sense, better than other farms in the area.

72. Other farmers in the area with similar soil types, similar crops, similar slopes and similar landscapes were rightly conservation practice compliant by USDA. These similar fields utilized less than state-of-the-art conservation practices and exhibited gullying, ephemeral erosion, and lowland soil deposition than the Bruhn farms. The Bruhn land did not exhibit erosion.

73. Similarly situated farmers were not subjected to the arbitrary Super Sod Bust rules applied to the Bruhns. Neither were they subjected to an NRCS and FSA campaign to prevent the tillage of their land.

74. Alan and Calvin Bruhn were singled out arbitrarily, intentionally and discriminatorily by USDA. The persons doing so include all individual defendants. The Bruhns constitute a class of two persons treated wrongly by the Defendants.

75. USDA and its staff knew the Bruhns had a Fifth Amendment right to be free from arbitrary and discriminatory treatment.

76. Despite this knowledge, they carried out an intentional, reckless and unsupportable comprehensive scheme to halt the Bruhns tillage of the fields they began renting in 2000.

77. USDA's differential treatment occurred with no rational basis and with ill will, malice and wrongful intent directed at the Bruhns.

78. The actions of USDA constitutes a violation of Equal Protection Clause, *U S Constitution, Amend V*. As a result, Alan and Calvin Bruhn have suffered the damages already described.

**Third Claim: Fifth Amendment Due Process**

79. USDA and its agents decided to terminate the Bruhns' farm program benefits in 2004, and years prior, through establishing arbitrary, discriminatory and fictitious standards to set the Bruhns up for Conservation Plan non-compliance and Farm Program benefit termination. This decision was made before any Conservation Compliance investigations or committee appeals.

80. Alan and Calvin Bruhn were not allowed a fair hearing at the county FSA Committee or the state FSA Committee level because USDA staff applied arbitrary, discriminatory and unsupportable standards, and because they previously consulted and decided they were not willing to objectively listen to, review and consider Alan and Calvin Bruhn's appeals.

81. This decision was made for reasons other than merit and were based upon a desire to see the Bruhn farm, or portions of it, removed from farm production.

82. Financial damage resulted in the manner previously described.

**Request for Relief**

83. Alan and Calvin Bruhn request $3 million damages, with the following items included:

83.1. Lost farm program benefits;

83.2. Direct, incidental and consequential damages for contract breach;

83.3. Lost marketing opportunities and profits;

83.4. Increased costs of doing business;

83.5. Costs, attorneys' fees and expert witness fees incurred in pursuing an appeal process made necessary by invalid Super Sod Bust standards.

83.6. Costs of this suit, attorneys fees and expert witness fees.

September __, 2006

Alan and Calvin Bruhn, Plaintiffs

By: ***s/David A. Domina***

David A. Domina, NE#11043
DOMINALAWGroup pc llo
2425 South 144th Street
Omaha, NE 68144-3267
402- 493-4100

*Attorneys for Plaintiffs*