# In the United States Court of Federal Claims

No. 06-258C
(Filed December 12, 2006)

```
* * * * * * * * * * * * * * * * * * * * * *   *
                                              *
ALVIN, SHERYL, and CALVIN                     *  Contracts; breach of contract;
BRUHN,                                        *  motion to dismiss; jurisdiction;
                                              *  scope of Farm Security and
            Plaintiffs,                       *  Rural Investment Act of 2002,
                                              *  Pub. L. 107-171, 116 Stat. 134
       v.                                     *  (2002).
                                              *
THE UNITED STATES,                            *
                                              *
            Defendant.                        *
                                              *
* * * * * * * * * * * * * * * * * * * * * *   *
```

Michael C. Stumo, Sheffield, MA, counsel for plaintiffs. David A. Domina, Domina Law Group, PC, LLO, Omaha, NE, of counsel.

Gregg M. Schwind, Washington, DC, with whom was Assistant Attorney General Peter D. Keisler, for defendant. John P. Vos, U.S. Department of Agriculture, Kansas City, MO, of counsel.

**MEMORANDUM OPINION AND ORDER**

**MILLER,** Judge.

This case is before the court on defendant's motion to dismiss for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1). Defendant contends that the United States Court of Federal Claims lacks subject matter jurisdiction to reverse administrative determinations made by the National Appeals Division of the United States Department of Agriculture (the "NAD") and that plaintiffs have failed to provide any basis for the court to consider their claims under the Fifth Amendment. Argument is deemed unnecessary.

**FACTS**

Except as otherwise noted, the following facts derive from the Amended Complaint. Alan, Sheryl, and Calvin Bruhn ("plaintiffs") are row crop farmers in Mapleton, Iowa. 1/ Alan Bruhn began farming in 1987; today he is the primary manager of the Bruhn farm operation. In 2000 his son, Calvin Bruhn, joined the family business. Plaintiffs raise corn and soybeans on approximately 11,000 acres of property that they lease in the counties of Woodbury, Monona, and Crawford, Iowa.

Plaintiffs allege that the United States Department of Agriculture (the "USDA"), through its agencies—the Commodity Credit Corporation (the "CCC"), its local chapters of the Farm Service Agency (the "FSA"), and the Natural Resources Conservation Service (the "NRCS")—breached the Direct and Counter-Cyclical Program Contracts that plaintiffs entered into with the USDA for the crop years 2002, 2003, and 2004. Plaintiffs also allege that the USDA violated the Due Process and Equal Protection Clauses of the United States Constitution. As a result, plaintiffs contend that they were unable to receive benefits under the Farm Security and Rural Investment Act of 2002, Pub. L. 107-171, 116 Stat. 134 (2002) (codified as amended in scattered sections of 7 U.S.C. and 16 U.S.C.) (the "Farm Bill"). Without the Farm Bill benefits, plaintiffs state that bank lenders have been unwilling to provide loans necessary to continue farming operations. Consequently, plaintiffs are now threatened with bankruptcy.

Plaintiffs seek $3 million in damages for: (1) loss of farm program benefits; (2) direct, incidental, and consequential damages for the alleged breach of the Direct and Counter-Cyclical Program Contracts; (3) loss of marketing opportunities and profits; (4) increased costs of doing business; and (5) costs, attorneys' fees, and "expert witness fees incurred in pursuing an appeal process made necessary by invalid Super Sod Bust standards." Am. Compl. filed Sept. 20, 2006, ¶ 83.

Plaintiffs entered into Direct and Counter-Cyclical Program Contracts with the CCC for the 2002, 2003, and 2004 crop years. Among other promises, in return for counter-cycle payments, plaintiffs agreed to

---

1/ Sheryl Bruhn ("Sheryl") is the former wife of Alan Bruhn ("Alan"). Sheryl and Alan were married during the time period at issue in this case from 2000–04. After 2004 Sheryl and Alan divorced; Sheryl has provided Alan with a power of attorney, and Alan pursues this action on her behalf.

>timely file in the manner prescribed by CCC with the County Committee the following, and agree to meet any other certification or filing requirements, as may be required by CCC: . . . (3) A certification of compliance with the highly erodible land and wetland conservation provisions set forth in 7 CFR Part 12.

PX 1 at 10.

Their dispute before the court traces to the conservation methods plaintiffs used to meet the requirements of the erodible land and wetland conservation provision of their Direct and Counter-Cyclical Program Contracts. Between 2002 and 2004, plaintiffs used conservation methods that previously had been found acceptable and, according to plaintiffs, praised by NRCS officials. During the 2002 and 2003 crop years, plaintiffs were found to be "non-compliant temporarily, but ultimately persuaded USDA to allow them to receive most Farm Bill benefits" using these conservation methods. Am. Compl. ¶ 36. On December 16, 2003, plaintiffs entered into the 2004 Direct and Counter-Cyclical Program Contract with the CCC. PX 1 at 1.

Plaintiffs contend that in March 2004, the NRCS imposed a "Conservation Plan on certain Bruhn fields in Woodbury and Monana counties that contained standards not allowed or required under the Farm Bill, the regulations or NRCS policies." Am. Compl. ¶ 41. This standard was created by the NRCS using, according to plaintiffs, "fictitiously high Super Sod Bust . . . standards for waterways and terraces." Id. at 42.

On June 1, 2004, plaintiffs were notified that they were not in compliance with the conservation plan for Woodbury and Monona counties. Plaintiffs sought reconsideration of this finding, but the NRCS reiterated its decision in a July 28, 2004 letter. Subsequently, plaintiffs sought a county-level FSA review of the NRCS's non-compliance finding pursuant to 7 C.F.R. § 12.12 (2004), and 7 C.F.R. § 780.2 (2004) (amended 2005, 2006), asking the Woodbury County and Monona County FSA Committees to find that they had acted in "good faith." Am. Compl. ¶ 50. According to plaintiffs, the Woodbury County FSA Committee found good faith, "but the FSA and [the] NRCS failed and refused to provide [the documents relating to the good faith determination] to the Bruhns or their agents." Am. Compl. ¶¶ 50-60. In contrast, the Monona County FSA Committee declined to find good faith and denied plaintiffs' requests for reconsideration. Am. Compl. ¶¶ 51, 53.

Plaintiffs appealed the Monona County FSA Committee's determination to the Iowa State FSA Committee, which denied plaintiffs' appeal on March 29, 2005, and their request for reconsideration on July 25, 2005. Plaintiffs then appealed the Iowa State FSA Committee's decision to the NAD, seeking either a "reversal of the non-compliance finding and/or a determination [plaintiffs] acted in good faith and without an intent to violate [Highly

Erodible Land ("HEL")] rules."  Am. Compl. ¶ 61; see 16 U.S.C.A. §§ 3811-3814 (2006); 7 C.F.R. §§ 12.1-12.12, 12.20-12.33 (2006).

On November 23, 2005, the NAD hearing officer found in favor of plaintiffs.  First, the "NRCS soil erosion estimates [were] erroneous. . . . [and the] NRCS erred in finding Appellants non-compliant with the conservation plan."  DX 1 at 3 (discussing farm which NAD designated "Farm 1," which is one of plaintiffs' parcels of land located in Monona County); see also DX 2 (similar with respect to "Farm 2" as designated by NAD, which is one of plaintiffs' parcels of land located in Monona County); DX 3 (similar but with respect to "Farm 3," one of plaintiffs' parcels of land located in Monona County).  The hearing officer also found that plaintiffs acted in good faith, stating, "I find that by definition, Appellants acted in 'good faith' because they acted without intent to defraud or to seek unconscionable advantage and attempted to implement a conservation system."  DX 3 at 3 (stating that Farm 3 qualified for the good-faith exemption under 7 C.F.R. § 12); see also DX 2 at 4 (same, but discussing Farm 2); DX 1 at 1 (same, but discussing Farm 1).

During the appeal process, pursuant to 7 C.F.R. § 1403.8, the Monona County FSA office did not make any farm program payments to plaintiffs for the 2004 crop year.  Def.'s Br. filed July 28, 2006, at 2.  According to defendant, the FSA did not make these payments because plaintiffs were found to be out of compliance for 2004; instead, the FSA "withheld payments pending final resolution of those matters."  Id.  After the NAD decisions were issued in their favor, plaintiffs wrote the Monona County FSA Office seeking "restoration of 2004 farm program benefits and damages arising from the NRCS and FSA 2004 benefit denial."  DX 4 ¶ 1.  On February 14, 2006, the FSA advised plaintiffs of the following determinations:

> **Item 4.1 Disaster Benefits in the amount of $60,000.00**
> All payments due Alan and Calvin Bruhn have been paid.  As the sums paid constitute the full amount of the Bruhns['] request, there is no issue for the Bruhns to appeal with respect to these payments.
>
> **Item 4.2 Direct and Counter-Cyclical payments $240,000.00**
> All payments due Alan and Calvin Bruhn have been paid.  Because the Bruhns were paid up to the maximum payment limitation for direct payments and the full amount they earned under the counter cyclical program this is not an appealable issue.
>
> **Item 4.4 Soybean Sealing Denial $506,189.28**
> This request is denied.  Mr. Bruhn did not apply for any commodity loans on his 2004 crop soybeans.  This claim is speculative in nature.

>   Because Mr. Bruhn did not submit [loan deficiency payment ("LDP")] requests that FSA could have acted upon, this is not an appealable issue.
>
>   **Item 4.5 Market Losses from LDP**
>   This claim is denied. This claim is speculative in nature.
>
>   Because Mr. Bruhn did not submit LDP requests that FSA could have acted upon, this is not an appealable issue.
>
>   **Item 4.6 Interest Claims for Monies Lost $79,753.39**
>   All prompt payment interest payments due Alan and Calvin Bruhn have been paid according to Agency regulations. Any claim for prompt payment interest beyond that is denied.
>
>   Payment of interest is pursuant to a rule of general applicability, this is not an appealable issue.
>
>   **Item 4.7 Attorney Fees**
>   The County Committee doesn't express an opinion on this. This would have to be addressed to the National Appeals Division. . . .
>
>   **Item 4.3 LDP $344,367.87**
>   The request for additional LDP payments on the 2004 crop corn is denied. An application for benefits is required before payment can be made. Alan Bruhn actually filed for one LDP in 2004 which is evidence the County Office was willing to accept LDP applications from Mr. Bruhn. The County Office staff, on more than one occasion, asked Mr. Bruhn to file for additional LDP[]s on his 2004 corn crop and he declined to file applications.
>
>   Because the denial turns on an issue of fact, this is an appealable issue. . . .

DX 5 at 1-2.

As advised by the February 14, 2006 determination letter, plaintiffs sought reimbursement for attorneys' fees and costs from the NAD on February 21, 2006. The hearing officer denied plaintiffs' request, finding it incomplete and untimely in determinations issued pursuant to the Equal Access to Justice Act, 5 U.S.C. § 504 (2000); 7 C.F.R. §§ 1.80-1.203 (2006), issued on June 1, 2006.

On March 30, 2006, plaintiffs filed their complaint in the Court of Federal Claims seeking $3 million in damages for lost farm program benefits; direct, incidental, and consequential damages; lost marketing opportunities and profits; increased costs of doing business; and attorneys' fees and costs. Compl. filed Mar. 30, 2006, ¶ 82. Plaintiffs also filed a timely appeal of FSA's February 14, 2006 decision to the NAD. A hearing on the appeal was held on July 13, 2006, before a hearing officer, and a decision was issued on September 29, 2006. The hearing officer determined that plaintiffs did not apply for market assistance loans ("MAL") or LDPs, except for corn silage, for the 2004 crop year before May 31, 2005. He also determined that the "FSA did not err in denying payment for MAL[]s and LDP[]s. Consequently, [the hearing officer] must also find FSA did not err in denying marketing losses and interest." DX A at 4.

## DISCUSSION

1. Standard of review

Defendants seeks dismissal of plaintiffs' claims for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1). Plaintiffs contend that the court has subject matter jurisdiction based on two grounds. First, plaintiffs argue that their express or implied contract with the USDA is a basis for jurisdiction. Alternatively, plaintiffs contend that the Fifth Amendment of the Constitution confers jurisdiction.

The Tucker Act guides the jurisdictional reach of the Court of Federal Claims. See 28 U.S.C. § 1491(a)(1) (2000). Specifically, the Tucker Act "(1) . . . confers jurisdiction upon the Court of Federal Claims over the specified categories of actions brought against the United States, and (2) . . . waives the Government's sovereign immunity for those actions." Fisher v. United States, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc).

When a federal court hears a jurisdictional challenge, "its task is necessarily a limited one." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Id. The court must accept as true the facts alleged in the complaint and must construe such facts in the light most favorable to the pleader. See Henke v. United States, 60 F.3d 795, 797 (Fed. Cir. 1995) (holding that courts are obligated "to draw all reasonable inferences in plaintiff's favor"); Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 747 (Fed. Cir. 1988) (holding that "we normally consider the facts alleged in the complaint to be true and correct."). Nevertheless, if the jurisdictional facts alleged in the complaint are disputed, "the . . . court may consider relevant evidence in order to resolve the factual dispute." Reynolds, 846 F.2d at 747; see Moyer v. United States, 190 F.3d 1314, 1318 (Fed.

Cir. 1999) (holding that "[f]act-finding is proper when considering a motion to dismiss where the jurisdictional facts in the complaint . . . are challenged").

Once the court's subject matter jurisdiction is put into question, it is "incumbent upon [plaintiff] to come forward with evidence establishing the court's jurisdiction . . . . [Plaintiff] bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence." Reynolds, 846 F.2d at 748; see McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189 (1936) (holding that "[i]f [plaintiff's] allegations of jurisdictional facts are challenged by his adversary in any appropriate manner, he must support them by competent proof"). When a party alleges a lack of jurisdiction pursuant to RCFC 12(b)(1), only unchallenged facts are deemed to be correct and true. Hamlet v. United States, 873 F.2d 1414, 1416 (Fed. Cir. 1989).

The United States Court of Appeals for the Federal Circuit in Fisher sought to clarify Tucker Act jurisprudence, which had blended the questions of the Court of Federal Claims' jurisdictional grant with the merits of the claim. 402 F.3d at 1172. "This mixture has been a source of confusion for litigants and a struggle for courts." Id. The Federal Circuit concluded that the Tucker Act does not provide any substantive causes of action, instructing that, "in order to come within the jurisdictional reach and the waiver of the Tucker Act, a plaintiff must identify a separate source of substantive law that creates the right to money damages." Id.; see also United States v. Mitchell, 463 U.S. 206, 216 (1983). The Federal Circuit adopted a single-step approach to address whether a constitutional provision, statute, or regulation is money-mandating and therefore within the jurisdiction of the Court of Federal Claims:

> When a complaint is filed alleging a Tucker Act claim based on a Constitutional provision, statute, or regulation, . . . the trial court at the outset shall determine, either in response to a motion by the Government or *sua sponte*[,] . . . whether the Constitutional provision, statute, or regulation is one that is money-mandating.
>
> If the court's conclusion is that the Constitutional provision, statute, or regulation meets the money-mandating test, the court shall declare that it has jurisdiction over the cause, and shall then proceed with the case in the normal course. . . .
>
> If the court's conclusion is that the source as alleged and pleaded is not money-mandating, the court shall so declare, and shall dismiss the cause for lack of jurisdiction, a Rule 12(b)(1) dismissal—the absence of a

money-mandating source being fatal to the court's jurisdiction under the Tucker Act.

Fisher, 402 F.3d at 1173.

    2.  Subject matter jurisdiction over plaintiffs' breach of contract claim

Defendant maintains that the federal district court, not the Court of Federal Claims, is the proper court for judicial review of a NAD decision pursuant to 7 U.S.C. § 6999. 2/ Plaintiffs counter that they are not seeking reinstatement of farm program benefits owed or a review of the NAD decisions, but, rather, money damages for breach of the Direct and Counter-Cyclical Program Contracts, which, plaintiffs argue, fall outside the context of a NAD appeal.

The Tucker Act provides the Court of Federal Claims with jurisdiction to "render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). Defendant argues that this jurisdictional grant has been displaced by 7 U.S.C. § 6999 (2000), which provides: "A final determination of the [National Appeals] Division shall be reviewable and enforceable by any United States district court of competent jurisdiction in accordance with chapter 7 of Title 5." Id.

As the United States Court of Appeals for the District of Columbia remarked in Deaf Smith County Grain Processors, Inc. v. Glickman, 162 F.3d 1206 (D.C. Cir. 1998), "[t]he language of § 6999, standing alone, is subject to several plausible interpretations" and is "ambiguous." Id. at 1211-12. Accordingly, plaintiffs urge the court to rely on Baker v. United States, 50 Fed. Cl. 483 (2001), for the proposition that the Court of Federal Claims has jurisdiction over "crop producer claims for money damages arising from USDA's breach of a Farm Program contract, without regard to [the] availability of administrative remedies." Pls.' Br. filed Oct. 6, 2006, ¶ 35. Defendant, however, correctly distinguishes plaintiffs'

---

    2/  In the alternative, defendant initially requested that the court dismiss plaintiffs' claims for failure properly to exhaust their administrative remedies because their appeal of a FSA decision issued on February 14, 2006, was pending before the NAD. On September 29, 2006, the NAD issued "a final determination of the Department of Agriculture unless a timely request for review is filed" in response to plaintiffs appeal of the FSA decision. Therefore this issue has been resolved. At any rate, defendant did not revive this argument in its reply brief.

case, because in Baker plaintiffs were challenging the FSA's refusal to implement a decision that the NAD issued in their favor, not to rule on issues already determined by the NAD.

Farmers & Merchants Bank v. United States, 43 Fed. Cl. 38 (1999), is more instructive. Plaintiff in that case sought damages for the breach of a loan note guarantee issued by the FSA. Id. at 38-39 (stating "the plaintiff appealed the FSA's denial of their claim through the United States Department of Agriculture, National Appeals Division (NAD), which decided in favor of the FSA"). As in the case at bar, plaintiff argued that the Court of Federal Claims had jurisdiction as the relief sought was for money damages rather than a reversal of a NAD determination. Id. at 43. Judge Horn determined that the Court of Federal Claims did not have jurisdiction based on the following legal analysis:

> The text and legislative history of the 1994 Reorganization Act demonstrate, however, that the district courts are intended as the exclusive recourse for a plaintiff dissatisfied with the outcome of the relevant mandatory appeals process. Congress empowered the NAD with exclusive authority to adjudicate disputes arising from USDA programs. 7 U.S.C. § 6993 (1994), H.R. Rep. No. 103-714, Question 4. NAD adjudication is determinative of the rights in issue and is binding upon the parties unless reviewed and reversed by the designated court of competent jurisdiction. See Deaf Smith County Grain Processors, Inc. v. Glickman, 162 F.3d 1206, 1211 (D.C. Cir. 1998) (holding that "§ 6999 provides the district court with jurisdiction over all final determinations of the NAD."). . . . Congress has displaced Tucker Act jurisdiction in favor of another remedial scheme; namely administrative review in the National Appeals Division and judicial review in a district court. 7 U.S.C. § 6999 (1994); see Deaf Smith County Grain Processors, Inc. v. Glickman, 162 F.3d at 1211; see also Del-Rio Drilling Programs v. United States, 146 F.3d at 1367 (Fed. Cir. 1998) (holding that Congress is authorized to displace Tucker Act jurisdiction.)

43 Fed. Cl. at 43-44. As Judge Horn indicated, this conclusion is supported by the decision of Deaf Smith, in which the court examined the plain language of 7 U.S.C. § 6999 and its legislative history. The D.C. Circuit concluded that "[Congress] did not intend for the APA to govern the *jurisdiction* of the district court over these kinds of claims. Accordingly, [it held] that § 6999 provides the district court with jurisdiction over *all* final determinations of the NAD." Deaf Smith, 162 F.3d at 1211 (emphasis in original). Of particular importance to the instant case was the court's comment that

> if we determined that appellant's PAP claim was one for "money damages," but its DAP claim was not, jurisdiction over the NAD decision at issue in this

9

case could potentially lie in *both* the District Court and the Claims Court. We agree with the parties that it is highly unlikely that, given the jurisdictional confusion and uncertainty that reigned prior to the creation of the new NAD, Congress intended this result. In the end, although the evidence is not overwhelming and the language of the statute is far from unambiguous, it appears that the purpose of § 6999 was to simplify appeals from the NAD by placing jurisdiction over them solely in the district court.

Deaf Smith, 162 F.3d at 1213. This court adopts in the case at bar the analysis put forth by the D.C. Circuit in Deaf Smith.

Plaintiffs attempt to distinguish Farmers & Merchants by arguing that they "do not want a redetermination of benefit allowance. [Plaintiffs] seek the damages arising from the government's violation of the contract, as substitute for gains from loans." Pls.' Br. filed Oct. 6, 2006, ¶ 48. Plaintiffs further contend that "[t]he Government here merely is trying to engulf all possible claims arising from the transaction or occurrence of [the] USDA['s] wrongful ineligibility finding." Id. ¶ 39. Beyond stating that they are seeking unspecified "money damages," however, plaintiffs have failed to state how their complaint falls outside the administrative and judicial avenues available in the district courts and the agency appeal process mandated by 7 U.S.C. § 6999. Id. ¶ 49.

### 3. Subject matter jurisdiction over plaintiffs' constitutional claims

Plaintiffs also seek relief under theories based on the Fifth Amendment Equal Protection and Due Process Clauses. The court agrees with defendant that plaintiffs do not provide any basis to consider their claims under these constitutional provisions. The United States Supreme Court has stated that the Tucker Act alone does not create a substantive cause of action. See United States v. Testan, 424 U.S. 392, 400 (1976). More recently, in Fisher the Federal Circuit expounded upon this requirement: "The Tucker Act does not create a substantive cause of action; in order to come within the jurisdictional reach and the waiver of the Tucker Act, a plaintiff must identify a separate source of substantive law that creates the right to money damages." Fisher, 402 F.3d at 1172 (citing Testan, 424 U.S. at 398, and Mitchell, 463 U.S. at 216).

> As to [plaintiff's] claim for damages for alleged violation of the due process and equal protection clauses of the Constitution, it is firmly settled that these clauses do not obligate the United States to pay money damages. United States v. Testan, 424 U.S. 392, 401-02 (1976); Inupiat Community v. United States, 680 F.2d 122, 132 (1982); Carruth v. United States, 627 F.2d 1068,

10

1081 (1980). Therefore, these clauses of the fifth amendment do not trigger Tucker Act jurisdiction in the courts.

Mullenberg v. United States, 857 F.2d 770, 773 (Fed. Cir. 1988) (parallel citations omitted); see also Crocker v. United States, 125 F.3d 1475, 1476 (Fed. Cir. 1997) ("The Court of Federal Claims correctly concluded that it does not have jurisdiction to hear Crocker's due process or seizure claims under the Fifth Amendment to the United States Constitution." (citing LeBlanc v. United States, 50 F.3d 1025, 1028 (Fed. Cir. 1995), and Florida Rock Indus., Inc. v. United States, 791 F.2d 893, 898-99 (Fed. Cir. 1986))); see also Collins v. United States, 67 F.3d 284, 288 (Fed. Cir. 1995) ("[T]he trial court did not have jurisdiction over money claims that are based upon an alleged violation by the government of the due process clause.  This is so because the due process clause does not obligate the government to pay money damages.").  Plaintiffs have failed to show that the Fifth Amendment is a "money-mandating" constitutional provision.

## CONCLUSION

Accordingly, based upon the foregoing, defendant's motion to dismiss is granted.  The Clerk of the Court shall dismiss plaintiffs' amended complaint without prejudice for lack of subject matter jurisdiction.

**IT IS SO ORDERED.**

No costs.

s/ Christine O.C. Miller
_____
**Christine Odell Cook Miller**
Judge